IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02511-REB-BNB

LEX BAER,

Plaintiff,

v.

PEGGY HEIL, and
ARISTEDES ZAVARAS,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the defendant's **Motion to Dismiss** [Doc. #12, filed 01/07/2011] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), I may treat the motion as a Rule 56 summary judgment motion when matters outside the pleadings are presented to and not excluded by me, and all parties have been given a reasonable opportunity to respond as provided in Rule 56. Fed.R.Civ.P. 12(d). A party is deemed to have been given a reasonable opportunity to respond if the party does not attempt to exclude the supporting documents, but responds in kind to the movant's attempt to convert the motion. Nichols v. United States, 796 F.2d 361, 364 (10th Cir.1986); Lamb v. Rizzo, 391 F.3d 1133, 1136-37 (10th Cir. 2004).

In support of their argument that the plaintiff's claim for injunctive relief is moot, the defendants submitted an exhibit. In response, the plaintiff attached several exhibits to his *Answer to Motion to Dismiss* [Doc. #16] (the "Response"). I find that the parties have been given reasonable notice and opportunity to brief the motion as a summary judgment motion. I

have included the exhibits in my determination of this matter. Therefore, I have treated this as a Rule 56 motion for summary judgment.

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  BACKGROUND AND UNDISPUTED MATERIAL FACTS

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC").  He filed a Prisoner Complaint on October 14, 2010 [Doc. #2] (the "Complaint").  The Complaint and the record contain the following undisputed material facts:

1.  On July 30, 2007, the plaintiff was sentenced under the Sex Offender Lifetime Supervision Act of 1998 ("SOLSA"), C.R.S. § 18-1.3-1004(1)(a).[1] *Complaint*, p. 3, ¶ 1.[2]

2.  In September 2007, the plaintiff was placed on a waiting list for Phase I of the DOC's Sex Offender Treatment and Monitoring Program ("SOTMP").  On April 24, 2008, the plaintiff filed a grievance requesting treatment.  Id. at pp. 3-4, ¶ 3.  His request was denied, and he was informed that he was on the waiting list for treatment.  Id. at p. 4, ¶ 3; p. 14.

3.  The plaintiff's parole eligibility date was in February 2009.  Id. at pp. 14, 15.

4.  On October 8, 2008, the plaintiff had his first parole hearing as required by SOLSA.  His parole was deferred because (1) "Aggravating Factors/Inadequate Time Served (Circumstances of Offense)" and (2) "Risk Control Problems" "Needs Continued Correctional Treatment."[3]  Id. at ¶ 4; *Response*, p. 10.

---

[1]Section 18-1.3-1004(1)(a) states that: "[e]xcept as otherwise provided in this subsection (1) and in subsection (2) of this section, the district court having jurisdiction shall sentence a sex offender to the custody of the department for an indeterminate term of at least the minimum of the presumptive range specified in section 18-1.3-401 for the level of offense committed and a maximum of the sex offender's natural life."

[2]The Complaint is not consecutively paginated.  Therefore, I refer to the page numbers of the Complaint as they are assigned by the court's docketing system.

[3]In his Response to the Motion, the plaintiff states that he "has been annually deferred parole."  *Response*, p. 7.  Insofar as the plaintiff is asserting that his parole has been deferred more than one time, the record is clear that at the time he filed his Response, the plaintiff had attended one parole hearing and his parole had been deferred once.  *Complaint*, p. 4, ¶ 4; *Response*, p. 10.

6.  The plaintiff started sex offender treatment on March 15, 2009. *Complaint*, ¶ 5.

The plaintiff alleges that the defendants violated his procedural and substantive due process rights because sex offender treatment is "an absolute prerequisite to meet parole eligibility requirements"; the defendants withheld treatment beyond his parole eligibility date; and the defendants are continuing to withhold treatment without notice and an opportunity to be heard. Id. at pp. 4-5, ¶¶ 6-7; p. 5 ¶ 8.

The plaintiff seeks an order "requiring Defendants to provide full sex offender treatment criteria necessary to meet parole eligibility requirements by Plaintiff's next [parole eligibility date] of July, 2011." Id. at p. 11. He also seeks "[e]quitable monetary damages." Id.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Eleventh Amendment Immunity

The defendants assert that they are immune from liability insofar as they are being sued in their official capacities for damages. *Motion*, p. 4. The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh

Amendment immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06.  The defendants are employed by the Colorado Department of Corrections (the "DOC").  *Complaint*, p. 2.  The DOC is an agency or subdivision of the State of Colorado.  Consequently, the Eleventh Amendment bars suit against the defendants in their official capacities for retroactive monetary relief.  The Motion should be granted insofar as it seeks dismissal of the plaintiff's claim against the defendants in their official capacities for retroactive monetary relief.

### B.  Qualified Immunity

The defendants assert that they are entitled to qualified immunity.  *Motion*, pp. 12-13. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), aff'd, 520 U.S. 143 (1997). Thus, when an inmate alleges a violation of his due process rights, the court must first determine whether a liberty interest exists.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by* Sandin v. Conner, 515 U.S. 472 (1995). Generally, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); Sweeten v. Sneddon, 463 F.2d 713, 715 (10th Cir. 1972).

State-created liberty interests are found only under limited circumstances:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84.[4]

---

[4] In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest. The prior methodology required examination of statutes and regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." 515 U.S. at 480-81. The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976) and Wolff v. McDonnell, 418 U.S. 539 (1974). These principles focus on the nature of

The plaintiff contends that "the intent of the SOLSA was to have the treatment completed by the minimum period of incarceration in accordance with CRS 18-1.3-1006(1)(a)," *Response*, p. 8, and that participation in treatment "is an absolute prerequisite for release on parole." Id. at p. 2.

Section 18-1.3-1006(1)(a) provides:

> On completion of the minimum period of incarceration specified in a sex offender's indeterminate sentence, less any earned time credited to the sex offender pursuant to section 17-22.5-405, C.R.S., the parole board shall schedule a hearing to determine whether the sex offender may be released on parole. In determining whether to release the sex offender on parole, the parole board shall determine whether the sex offender has successfully progressed in treatment and would not pose an undue threat to the community if released under appropriate treatment and monitoring requirements and whether there is a strong and reasonable probability that the person will not thereafter violate the law. The department shall make recommendations to the parole board concerning whether the sex offender should be released on parole and the level of treatment and monitoring that should be imposed as a condition of parole. The recommendation shall be based on the criteria established by the management board pursuant to section 18-1.3-1009.

The statute does not state that the parole board shall consider whether the sex offender has successfully *completed* treatment, it states that the board shall consider--among other things--whether the sex offender has *successfully progressed* in treatment. When confronting the same argument as the plaintiff's, the court in Firth v. Shoemaker, 2010 WL 882505 (D.Colo. March 8, 2010), stated:

> Far from suggesting that treatment must be completed before the minimum sentence expires in order to permit release on parole,

---

the deprivation instead of the language of a particular statute or regulation. Sandin, 515 U.S. at 481.

> [section 18-1.3-1006(1)(a)] indicates that the parole determination
> inquires only whether treatment has sufficiently progressed -
> implying that an inmate may be granted parole despite not having
> completed SOTMP, so long as he is diligently working toward
> such completion. Indeed, the statute contemplates that release on
> parole can be conditioned upon the offender continuing SOTMP
> treatment while free on parole, further bolstering the conclusion
> that completion of SOTMP before the minimum sentence date is
> not required by Colorado law.

Id. at *5.

In addition, according to the Colorado Supreme Court, the parole board's ability to grant or deny parole under the section 18-1.3-1006(1) is discretionary:

> On completion of the minimum period of incarceration specified in
> the sex offender's indeterminate sentence, less any credits earned
> by him, the [Sex Offender Lifetime Supervision Act] assigns
> discretion to the parole board to release [a defendant] to an
> indeterminate term of parole of at least ten years for a class four
> felony, or twenty years for a class two or three felony, and a
> maximum of the remainder of the sex offender's natural life.

Vensor v. People, 151 P.3d 1274, 1276 (Colo. 2007). See also People v. Oglethorpe, 87 P.3d 129, 136 (Colo.App. 2003) (stating that "[t]he decision to grant parole or absolute release to an inmate incarcerated for an indeterminate sentence under the [Sex Offender Lifetime Supervision Act] is vested within the sound discretion of the state parole board"). The Tenth Circuit Court of Appeals has also found that the parole board's ability to grant or deny parole under section 18-1.3-1006(1) is discretionary. Beylik v. Estep, 377 Fed.Appx. 808, 2010 WL 1916414, at *3 (10th Cir. May 13, 2010) (stating that the decision to grant parole under the Sex Offender Lifetime Supervision Act is "wholly discretionary" and thus "does not create a liberty interest entitled to due process protection").

The plaintiff argues that section 18-1.3-1004(3), C.R.S., creates a liberty interest in sex offender treatment "by the completion of the sex offender's minimum period of incarceration." *Response*, p. 5. Section 18-1.3-1004(3) provides that "[e]ach sex offender sentenced pursuant to this section shall be required as a part of the sentence to undergo treatment to the extent appropriate pursuant to section 16-11.7-105, C.R.S." Section 6-11.7-105 requires that each sex offender undergo treatment "to the extent appropriate." When read alone or in conjunction with section 18-1.3-1006(1), sections 18-1.3-1004(3) and 16-11.7-105 do not contain any language which requires that sex offender treatment be completed prior to the sex offender's minimum period of incarceration.

The plaintiff also argues that the DOC's Administrative Regulation ("AR") 700-19, §IV(G) creates a liberty interest in completing sex offender treatment prior to the expiration of his minimum sentence. The plaintiff provides a copy of AR 700-19, effective November 1, 2007, which provides in pertinent part:

> In 1998 the Colorado Legislature passed the Colorado Lifetime Supervision Act. Under this sentence offenders must serve the term of their minimum sentence in prison and participate and progress in treatment in order to be considered a candidate for parole. The Department of Corrections shall provide treatment formats which give offenders the opportunity to progress in treatment and be considered a candidate for parole within the time period of their minimum sentence.

*Response*, p. 12.

The plaintiff's version of AR 700-19 does not mandate that sex offender treatment be completed prior to the sex offender's minimum period of incarceration.[5] Moreover, "[a]fter

---

[5] I may take judicial notice of administrative regulations. Fed.R.Evid. 201. The current regulation, effective March 4, 2011, provides DOC officials "considerable discretion in

10

Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest . . . is not the language of regulations" but the nature of the condition in relation to the ordinary incidents of prison life. Wilkinson v. Austin, 545 U.S. 209, 223 (2005).

In Sandin, the Court examined whether the state's action inevitably affected the duration of the prisoner's sentence. Sandin, 515 U.S. at 87. Here, the plaintiff's inability to complete sex offender treatment prior to the expiration of his minimum sentence did not inevitably affect the duration of his sentence. To the contrary, the parole board deferred consideration of the plaintiff's parole to July 2011 not only because he needed continued treatment, but also because of "Aggravating Factors/Inadequate Time Served (Circumstances of Offense)." *Response*, p. 10.

The plaintiff argues that Beebe v. Heil, 333 F. Supp.2d 1011, 1016-17 (D. Colo. 2004), establishes that he has a liberty interest in receiving sex offender treatment "in such a way as to meet parole eligibility requirements by the completion of [his] minimum sentence." *Complaint*, p. 3, ¶ 2. The plaintiff's reliance on Beebe is misplaced.

In Beebe, the inmate was dismissed from SOTMP without notice, explanation, or an opportunity to be heard. The court held that an inmate sentenced under section 18-3-305(1) of the Colorado Sex Offender Lifetime Supervision Act had a liberty interest in obtaining sex offender treatment and was entitled to a hearing prior to being terminated from SOTMP. Here, the plaintiff does not allege that he was terminated from the program without notice or opportunity to be heard or that he is unable to obtain sex offender treatment. To the contrary, he

---

determining when an inmate is given access to SOTMP." Firth, 2010 WL 882505, at *6. The language of the version in effect in February 2009 (the plaintiff's parole eligibility date) is not provided by either party.

admits that he started treatment on March 15, 2009. His complaint is that he was not provided treatment quickly enough to satisfy parole eligibility for his first parole hearing. *Complaint*, p. 4, ¶ 4. Beebe, however, did not hold that the inmate had a liberty interest in receiving treatment sufficient to meet parole eligibility requirements prior to completion of an inmate's minimum sentence and/or his first parole eligibility date.

Moreover, even if the plaintiff had sufficiently alleged a liberty interest and a violation of his right to due process under Beebe, a right "is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." Scull, 236 F.3d at 595. Beebe is the only case the plaintiff relies on to establish a liberty interest. Beebe is not "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." Therefore, the authority cited by the plaintiff does not demonstrate that the right alleged here was clearly established at the time of the defendants' conduct, and the defendants are entitled to qualified immunity.

The defendants' failure to provide the plaintiff with sex offender treatment prior to completion of his minimum sentence does not constitute atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, the plaintiff does not have a liberty interest in completing sex offender treatment prior to completion of his minimum sentence, and he has not been deprived of his due process rights.

Finally, I note that the plaintiff is serving an indeterminate sentence of the minimum of his presumptive sentencing range to life. Therefore, the plaintiff is not merely seeking eligibility for parole, but is instead attempting to shorten the duration of his confinement through release on

parole. Where a plaintiff attacks the fact or duration of his confinement and seeks the remedy of shortened confinement or immediate release, his claims must be asserted in a petition for writ of habeas corpus. McIntosh v. Untied States Parole Commission, 115 F.3d 809, 812 (10th Cir. 1997). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriquez, 411 U.S. 475, 484 (1973). By contrast, where an action is brought to correct alleged constitutionally defective parole procedures including sex offender treatment, relief is properly sought in a civil rights action. Reed v. McKune, 298 F.3d 946, 954 (10th Cir. 2002); Chambers, 205 F.3d 1237. Insofar as the plaintiff is attempting to shorten the duration of his confinement, the claim is not appropriate in a civil rights action.[6]

## IV. CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[6] Because I find that the plaintiff's claim must be dismissed on these grounds, I do not address the defendants' remaining arguments.

Dated August 3, 2011.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge